**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL LEON, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>   v.<br><br>STEMLINE THERAPEUTICS, INC., IVAN BERGSTEIN, RON BENTSUR, DARREN CLINE, ALAN FORMAN, DANIEL HUME, MARK SARD, and KENNETH ZUERBLIS,<br><br>   Defendants. | Case No. 1:20-cv-03931<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Leon ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action on behalf of himself and the public stockholders of Stemline Therapeutics, Inc. ("Stemline" or the "Company") against the Company and Stemline's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), §§ 78n(e) and 78t(a) respectively, and U.S. Securities and Exchange Commission (the "SEC") Rule 14d-9 (17 C.F.R. § 240.14d-9), in connection with the proposed acquisition of Stemline by A. Menarini – Industrie Farmaceutiche Riunite – S.r.l. ("Menarini").

2. On May 4, 2020, the Company announced that Menarini intended to commence a tender offer in which Menarini would seek to acquire all the outstanding shares of the Company's

common stock at a total potential consideration of $12.50 per share, representing an upfront payment of $11.50 and one non-tradable Contingent Value Right ("CVR") that entitles the holder to an additional $1.00 in cash per share upon completion of the first sale of ELZONRIS in any EU5 country after European Commission approval (the "Tender Offer").

3. The Tender Offer commenced on May 12, 2020 when Menarini filed a Tender Offer Statement on Schedule TO with the SEC. Also on May 12, 2020, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "14D-9") with the SEC, recommending that the Company's stockholders tender their shares for the Tender Offer price. The Tender Offer is set to expire on June 9, 2020.

4. Plaintiff alleges that the 14D-9 is materially false and/or misleading because, *inter alia*, it fails to disclose certain inputs underlying certain valuation methodologies employed by the Company's financial advisors PJT Partners LP ("PJT Partners") and BofA Securities, Inc. ("BofA") in support of their opinions that the Tender Offer is fair to shareholders, on which the Board relied. These omissions render the projected financial disclosures and the summary of the fairness opinion in the 14D-9 incomplete and/or misleading.

5. The failure to adequately disclose such material information constitutes a violation of §§ 14(e) and 20(a) of the Exchange Act, among other reasons, because Stemline stockholders are entitled to such information in order to make a fully-informed decision regarding whether to tender their shares in connection with the Tender Offer.

6. For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Tender Offer unless, and until, the material information discussed below is disclosed to Stemline shareholders sufficiently in advance of the expiration of the Tender Offer or, in the event the Tender Offer is

consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under §§ 14(e) and 20(a) of the Exchange Act, 15 U.S.C. § 78n(e) and 78t(a). The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Stemline's maintains its principal executive offices in this District.

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of Stemline common stock.

11. Defendant Stemline is incorporated in Delaware and maintains its principal executive offices at 750 Lexington Avenue, Eleventh Floor, New York, NY 10022. The Company's common stock trades on the NASDAQ under the ticker symbol "STML."

12. Individual Defendant Ivan Bergstein is Stemline's President, Chief Executive Officer, Founder and Chairman and has been a director of Stemline at all relevant times.

13. Individual Defendant Ron Bentsur has been a director of Stemline at all relevant times.

14. Individual Defendant Darren Cline has been a director of Stemline at all relevant times.

15. Individual Defendant Alan Forman has been a director of Stemline at all relevant times.

16. Individual Defendant Daniel Hume has been a director of Stemline at all relevant times.

17. Individual Defendant Mark Sard has been a director of Stemline at all relevant times.

18. Individual Defendant Kenneth Zuerblis has been a director of Stemline at all relevant times.

19. The Individual Defendants referred to in paragraphs 12-18 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action individually and as a class action on behalf of all holders of Stemline stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

21. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

22. The Class is so numerous that joinder of all members is impracticable. As of May 11, 2020, there were approximately 53,000,000 shares of common stock issued and outstanding. On information and belief, these shares are held by thousands of beneficial holders who are geographically dispersed across the country.

23. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

    a. whether Defendants have violated Sections 14 and 20 of the Exchange Act, and SEC regulations promulgated thereunder, in connection with the Tender Offer; and

    b. whether Plaintiff and the other members of the Class would be irreparably harmed and/or otherwise damaged were the transaction complained of herein consummated.

24. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

25. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

27. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

29. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will suffer absent judicial intervention and, in the absence of injunctive relief, seeks to pursue a claim for damages.

**SUBSTANTIVE ALLEGATIONS**

I.   **The Tender Offer**

30. Stemline is a commercial-stage biopharmaceutical company focused on discovering, acquiring and commercializing oncology therapeutics. One of the Company's drugs, ELZONRIS (tagraxofusp-erzs), was approved by the U.S. Food and Drug Administration and is commercially available in the U.S., for the treatment of adult and pediatric patients, two years and older, with blastic plasmacytoid dendritic cell neoplasm. ELZONRIS is the first treatment approved for blastic plasmacytoid dendritic cell neoplasm and the first approved CD123-directed therapy. Additionally, the Company is advancing a pipeline of additional novel therapeutic candidates, including felezonexor (SL-801), an oral small molecule XPO-1 inhibitor currently in an ongoing Phase 1 trial of patients with advanced solid tumors, and SL-1001, an oral small molecule RET (rearranged during transfection) kinase inhibitor currently in investigational new drug directed studies intended for patients with a variety of genetically-defined malignancies.

31. On May 4, 2020, Stemline and Menarini issued a joint press release announcing the Tender Offer, which states in pertinent part:

FLORENCE, Italy and NEW YORK, May 04, 2020 (GLOBE NEWSWIRE) -- Menarini Group, a privately held Italian pharmaceutical and diagnostics company, and Stemline Therapeutics Inc., a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics, (Nasdaq: STML) today announced a definitive agreement under which Menarini Group will acquire Stemline in a transaction valued up to $677 million.

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 in cash and one non-tradeable Contingent Value Right (CVR) that will entitle each holder to an additional $1.00 in cash per share upon completion of the first sale of ELZONRIS in any EU5 country after European Commission approval. Stemline launched ELZONRIS for the treatment of blastic plasmacytoid dendritic cell neoplasm (BPDCN) in adult and pediatric patients, two years or older, following the approval by the United States Food and Drug Administration in December 2018. ELZONRIS is a novel targeted therapy directed to the interleukin-3 (IL-3) receptor-α (CD123).

With the support of Menarini's infrastructure, Stemline will continue its efforts to develop additional applications of ELZONRIS to serve the unmet needs of patients suffering from difficult to treat diseases and cancers. Following its strong U.S. launch of ELZONRIS, Stemline will benefit from Menarini's experience in bringing products to markets in Europe and emerging markets as it prepares for a successful international launch upon receipt of regulatory approval in ex-U.S. territories.

Elcin Barker Ergun, CEO of Menarini Group, commented, "Stemline is an excellent fit for Menarini, enabling us to expand our presence in the U.S. with an established biopharmaceutical company focused on developing oncology therapeutics. Through this acquisition, we will continue to strengthen our portfolio and pipeline of oncology assets and deliver novel therapies around the world. We look forward to uniting together with the Stemline team to advance our shared mission of serving patients."

Ivan Bergstein, M.D., Chairman, CEO and Founder of Stemline, said, "Joining Menarini represents a unique opportunity for Stemline to advance the commercialization of ELZONRIS across the globe and to accelerate the development of our pipeline of oncology assets. We have transitioned Stemline over the last several years into an established commercial-stage operation with a novel treatment, a growing pipeline and a strong foundation. We are excited to be combining with a like-minded organization in Menarini, in a transaction that will

deliver immediate and significant cash value to our shareholders, while also allowing our shareholders to participate in the future upside of ELZONRIS's European launch. We look forward to working closely together on our unified goal of helping and delivering hope to patients worldwide."

**Transaction Terms**

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 per share in cash, along with one non-tradeable Contingent Value Right (CVR).

Under the terms of the non-tradeable CVR, Stemline shareholders will be paid an additional $1.00 per share upon completion of the first sale for use or consumption by the general public of ELZONRIS in BPDCN in any one of the following countries: United Kingdom, France, Spain, Germany, or Italy after receiving approval by the European Commission of a Marketing Authorization Application (MAA), through the centralized procedure, on or before December 31, 2021. There can be no assurance such approval or commercialization will occur or that any contingent payment will be made.

Menarini will acquire any shares of Stemline not tendered into the tender offer through a second-step merger for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

The transaction has been unanimously approved by the Boards of Directors of both companies. Stemline's Board of Directors recommends to shareholders of Stemline that they tender their shares into the tender offer. The transaction is expected to close in the second quarter of 2020, subject to customary closing conditions, including the tender of more than 50% of all shares of Stemline outstanding at the expiration of the offer and receipt of Hart-Scott-Rodino clearance. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.

Menarini expects to fund the acquisition through existing cash resources.

**Advisors**

Goldman Sachs International is acting as exclusive financial advisor and Fried, Frank, Harris, Shriver & Jacobson LLP is acting as legal advisor to Menarini. PJT Partners and BofA Securities are acting as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP and Alston & Bird LLP are acting as legal advisors to Stemline.

**About ELZONRIS®**

ELZONRIS® (tagraxofusp), a targeted therapy directed to CD123, is approved by the U.S. Food and Drug Administration (FDA) and commercially available in the U.S. for the treatment of adult and pediatric patients, two years or older, with BPDCN. For full prescribing information in the U.S., visit www.ELZONRIS.com. In Europe, a marketing authorization application (MAA) is under review by the European Medicines Agency (EMA).

**About BPDCN**

BPDCN, formerly blastic NK-cell lymphoma, is an aggressive hematologic malignancy, often with cutaneous manifestations, with historically poor outcomes. BPDCN typically presents in the bone marrow and/or skin and may also involve lymph nodes and viscera. The BPDCN cell of origin is the plasmacytoid dendritic cell (pDC) precursor. The diagnosis of BPDCN is based on the immunophenotypic diagnostic triad of CD123, CD4, and CD56, as well as other markers. The World Health Organization (WHO) termed this disease "BPDCN" in 2008; previous names included blastic NK cell lymphoma and agranular CD4+/CD56+ hematodermic neoplasm. For more information, please visit the BPDCN disease awareness website at www.bpdcninfo.com.

**About Stemline**

Stemline Therapeutics, Inc. is a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics. ELZONRIS® (tagraxofusp), a targeted therapy directed to CD123, is FDA-approved and commercially available in the U.S. for the treatment of adult and pediatric patients, two years and older, with BPDCN. It is the only FDA-approved therapy for BPDCN in the U.S. In Europe, a marketing authorization application (MAA) is under review by the European Medicines Agency (EMA). ELZONRIS is also being evaluated in clinical trials in additional indications including chronic myelomonocytic leukemia (CMML), myelofibrosis (MF), acute myeloid leukemia (AML), and additional trials and indications are planned. For more information, please visit the company's website at www.stemline.com.

**About Menarini**

The Menarini Group is a leading international pharmaceutical company with a presence in over 100 countries, including a direct presence in over 70 countries. Its global platform extends throughout Europe, Central America, Africa, the Middle East and Asia and generates over $4.2 billion in annual sales. For over 125 years, Menarini has been investing in the development and commercial distribution of pharmaceuticals to serve patients and physicians around the world with a full portfolio of products in the cardiovascular, gastroenterology, metabolic, infectious diseases and anti-inflammatory/analgesic therapeutic areas. Menarini is also

committed to oncology, with several new investigational drugs in development for the treatment of a variety of tumors.

32. Stemline is well-positioned for financial growth and the Tender Offer fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the 14D-9, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Tender Offer for themselves and make an informed decision concerning whether or not to tender their shares.

33. If the false and/or misleading 14D-9 is not remedied and the Tender Offer is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e. the difference between the value to be received as a result of the Tender Offer and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## II. The Materially Incomplete and Misleading 14D-9

34. On May 12, 2020, Defendants caused the 14D-9 to be filed with the SEC in connection with the Tender Offer. The 14D-9 solicits the Company's shareholders to tender their shares to Menarini. Defendants were obligated to carefully review the 14D-9 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the 14D-9 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 omits material information regarding the summary of the valuation methodologies performed by the Company's financial advisors in connection with their valuation analyses.

### *The Materially Misleading Financial Analyses*

35. With respect to PJT Partners' *Selected Precedent Merger Analysis*, the 14D-9 fails to disclose the individual multiples calculated in the analysis. 14D-9 at 38-39.

36. With respect to BofA's *Selected Precedent Transactions Analysis*, the 14D-9 fails to disclose the individual multiples calculated in the analysis. *Id.* at 45.

37. Both PJT Partners and BofA performed a discounted cash flow analysis on Stemline. With respect to PJT Partners's *Discounted Cash Flow Analysis*, the 14D-9 discloses that PJT Partners discounted Stemline's projected unlevered free cash flows (including net operating loss cash tax savings) for the period April 1, 2020, through fiscal year end 2031 using an after tax discount rate range of 12% to 14%, based on the Company's weighted average cost of capital. *Id.* at 40. PJT Partners then subtracted the Company's net debt, added the Company's estimated cash, cash equivalents and short-term investments, and divided by the number of fully diluted shares outstanding. *Id.*

38. With respect to PJT Partners's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose if a terminal value was calculated, and if one was, how it was calculated, and the inputs and assumptions that went into the selection of the discount rate range.

39. With respect to BofA's *Discounted Cash Flow Analysis*, the 14D-9 discloses that BofA performed a discounted cash flow analysis on the standalone risk-adjusted, unlevered, after-tax free cash flows that Stemline was forecasted to generate during the second quarter to the fourth quarter of 2020, and fiscal years 2021 through 2031. *Id.* at 45. BofA applied a discount rate range of 9.0% to 12.0% to the cash flows, which was based on an estimate of Stemline's weighted average cost of capital. *Id.* BofA then added the Company's estimated cash and divided by the number fully diluted shares outstanding. *Id.* at 45-46.

11

40. With respect to BofA's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose if a terminal value was calculated, and if one was, how it was calculated, the inputs and assumptions that went into the selection of the discount rate range and the Company's estimated cash.

41. Since information was omitted, shareholders are unable to discern the veracity of PJT Partners's and BofA's discounted cash flow analyses. Without further disclosure, shareholders are unable to compare PJT Partners's and BofA's calculations with the Company's financial projections. The absence of any single piece of the above information renders PJT Partners's and BofA's discounted cash flow analyses incomplete and misleading. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

42. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78.

43. Therefore, in order for Stemline shareholders to become fully informed regarding the fairness of the Tender Offer, the material omitted information must be disclosed to shareholders.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Stemline stockholders. Accordingly, based on the foregoing disclosure deficiencies in the 14D-9, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Stemline stockholders will suffer, absent judicial intervention, if Stemline's stockholders are required to decide whether or not to tender their shares without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
### Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." 15 U.S.C. § 78n(e).

47. As discussed above, Stemline filed and delivered the 14D-9 to its stockholders, which Defendants knew contained, or recklessly disregarded, material omissions and misstatements described herein.

48. Defendants violated § 14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the 14D-9 failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

13

49. The 14D-9 was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

50. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the 14D-9, Defendants were aware of this information and their obligation to disclose this information in the 14D-9.

51. The omissions and misleading statements in the 14D-9 are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the 14D-9 as altering the "total mix" of information made available to stockholders.

52. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the 14D-9, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the 14D-9, rendering certain portions of the 14D-9 materially incomplete and therefore misleading.

53. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, and Plaintiff and Stemline stockholders will be deprived of their entitlement to make a fully informed

decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Against the Individual Defendants for**
**Violations of § 20(a) of the Securities Exchange Act of 1934**

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Stemline within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Stemline and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 14D-9, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The 14D-9 contains the unanimous recommendation of the Individual Defendants to approve the Tender Offer. They were thus directly involved in the making of the 14D-9.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Tender Offer, unless and until the Company discloses the material information discussed above, which has been omitted from the 14D-9;

C. In the event Defendants consummate the Tender Offer, awarding damages to Plaintiff and the Class;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 20, 2020

                                                 Respectfully submitted,

                                                 By: *James M. Wilson, Jr.*
                                                 Nadeem Faruqi
                                                 James M. Wilson, Jr.

**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com
　　　　jwilson@faruqilaw.com

*Counsel for Plaintiff*

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Michael Leon ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Stemline Therapeutics, Inc. ("Stemline") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Stemline securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

   I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

   Signed this 15th day of May, 2020.

                                          _____
                                               Michael Leon

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 01/03/20 | 425 |
| | | |
| | | |